## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| David Keller, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:22-cv-00042-TBM-RPM |
| El Dorado Oil & Gas, Inc., Excell Operating, Inc., Bullzeye Oilfield Service LLC, Thomas L. Swarek, Jonathan Swarek, Michael Boothe, and Zackry Maxey, | § § § § § § | JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff David Keller ("Keller" or "Plaintiff"), individually and on behalf of all other similarly situated employees, files this First Amended Complaint[1] against El Dorado Oil & Gas, Inc. ("El Dorado"), Excell Operating Inc. ("Excell"), Bullzeye Oilfield Service LLC ("Bullzeye"), Thomas L. Swarek ("T. Swarek"), Jonathan Swarek ("J. Swarek"), Michael Boothe ("Boothe"), and Zackry Maxey ("Maxey") (collectively, "Defendants") showing in support as follows:

### I.   NATURE OF ACTION

1.     This is a civil action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") seeking damages for Defendant's failure to pay Plaintiff time and one-half the regular rate of pay for all hours worked over 40 during each seven-day workweek while working for Defendant paid on a day rate basis.

---

[1] This First Amended Complaint is filed within the time set by Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure ("Amending as a Matter of Course") and so a motion for leave is not required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

2.      Plaintiff files this lawsuit individually and as an FLSA collective action on behalf of all similarly situated current and former employees of Defendant while paid on a day rate basis who, like Plaintiff, were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven-day workweek in the time period of three years preceding the date this lawsuit was filed and forward (the "Collective Action Members").

3.      Plaintiff and the Collective Action Members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.      THE PARTIES

### A.      Plaintiff David Keller

4.      Plaintiff Keller is an individual residing in Live Oak County, Texas. Plaintiff has standing to file this lawsuit.

5.      Plaintiff began working for Defendant on or about March of 2018 as an intrastate wastewater truck driver. On or about August of 2020, Plaintiff changed roles and became a pumper/gauger. Plaintiff stopped working for Defendant on or about February 2022.

6.      At times relevant to the claims made in this lawsuit, Plaintiff was paid on a hybrid day rate scheme ranging from $200-250 per day. The day rate was intended to compensate Plaintiff for a ten (10) hour workday. If Plaintiff worked over forty (40) hours in a workweek, he was paid at his effective hourly rate of $20 or $25 for all additional hours worked ("straight time for overtime"), but he was not paid overtime premium pay at the rate of one- and one-half times his regular rate of pay. Furthermore, he was not compensated for all hours of overtime that he worked ("off-the-clock").

7.      Plaintiff's written consent to participate in this lawsuit was previously filed in this lawsuit.

B.    **Putative Collective Action Members**

8.     The putative Collective Action Members are:

All current or former employees of Defendant who were paid on a hybrid day rate basis and who are/were not paid time and one-half their respective regular rates of pay for all hours worked over forty (40) during each seven-day workweek.

9.     Because Defendant did not pay all overtime premium compensation due to its employees paid on a hybrid day rate basis who routinely worked in excess of 40 hours per workweek, Plaintiff and the putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

10.     The relevant time period for the claims of the putative Collective Action Members is three years preceding the date this lawsuit was filed and forward until the conclusion of the pay policy and/or practice, on information and belief, on or about August of 2021.

C.    **Defendant El Dorado Oil & Gas, Inc.**

11.     Defendant El Dorado Oil & Gas, Inc. ("El Dorado") is a for-profit corporation organized under the laws of the state of Mississippi.

12.     During all times relevant to this lawsuit, El Dorado has done business in the State of Mississippi.

13.     El Dorado's principal place of business, as listed with the Mississippi Secretary of State is 1261 Pass Road; Gulfport, MS 39501.

14.     At all times relevant to this lawsuit, El Dorado is and has been an "enterprise engaged in commerce" as defined by the FLSA.

15.     At all times relevant to this lawsuit, El Dorado employed and continues to employ two or more employees.

16.     At all times relevant to this lawsuit, El Dorado employed two or more employees

who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

17.     At all times relevant to this lawsuit, El Dorado employed two or more employees who regularly engaged in commerce in their daily work, including, but not limited to: transportation of goods within the state, communications using phones and/or radio with other employees and representatives.

18.     Furthermore, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, fuel, equipment, and supplies/materials used in connection with oilfield operations.

19.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

20.     Defendant has been served with summons through its registered agent Thomas L. Swarek, located at 1261 Pass Road, Gulfport, MS 39501.

**D.     Defendant Excell Operating, Inc.**

21.     Defendant Excell Operating, Inc. ("Excell") is a for-profit corporation organized under the laws of the state of Mississippi.

22.     During all times relevant to this lawsuit, Excell has done business in the State of Mississippi.

23.     Excell's principal place of business, as listed with the Mississippi Secretary of State is 1261 Pass Road; Gulfport, MS 39501.

24.     At all times relevant to this lawsuit, Excell is and has been an "enterprise engaged in commerce" as defined by the FLSA.

25.     At all times relevant to this lawsuit, Excell employed and continues to employ two or more employees.

26.     At all times relevant to this lawsuit, Excell employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

27.     At all times relevant to this lawsuit, Excell employed two or more employees who regularly engaged in commerce in their daily work, including, but not limited to: transportation of goods within the state, communications using phones and/or radio with other employees and representatives.

28.     Furthermore, Excell employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, fuel, equipment, and supplies/materials used in connection with oilfield operations.

29.     On information and belief, at all times relevant to this lawsuit, Excell has had annual gross sales or business volume in excess of $500,000.

30.     Excell may be served with summons through its registered agent Michael Boothe, located at 1261 Pass Road, Gulfport, MS 39501.

**E.     Defendant Bullzeye Oilfield Service LLC**

31.     Defendant Bullzeye Oilfield Service LLC ("Bullzeye") is a limited liability company organized under the laws of the state of Texas.

32.     Bullzeye's principal place of business, as listed with the Texas Secretary of State is PO Box 368; Merkel, Texas 79536.

33.     At all times relevant to this lawsuit, Bullzeye is and has been an "enterprise engaged

in commerce" as defined by the FLSA.

34.    At all times relevant to this lawsuit, Bullzeye employed and continues to employ two or more employees.

35.    At all times relevant to this lawsuit, Bullzeye employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

36.    At all times relevant to this lawsuit, Bullzeye employed two or more employees who regularly engaged in commerce in their daily work, including, but not limited to: transportation of goods within the state, communications using phones and/or radio with other employees and representatives.

37.    Furthermore, Bullzeye employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, fuel, equipment, and supplies/materials used in connection with oilfield operations.

38.    On information and belief, at all times relevant to this lawsuit, Bullzeye has had annual gross sales or business volume in excess of $500,000.

39.    Bullzeye may be served through its registered agent Keith Maxey at 664 CR 307; Tye, Texas 79593.

**F.    Defendant Thomas L. Swarek**

40.    Defendant Thomas L. Swarek ("T. Swarek") is an individual and the Director and President of El Dorado Oil & Gas, Inc.

41.     At all times relevant to this lawsuit, Defendant T. Swarek has/had operational control over Defendant El Dorado and had decision-making authority over Plaintiff and the employees of the single enterprise at issue in this case with respect to pay policies and/or practices.

42.     At all times relevant to this lawsuit, Defendant T. Swarek was active in the day-to-day business operations of Defendant El Dorado and the single enterprise at issue and had responsibility for compliance with the FLSA with respect to Plaintiff and the employees of the single enterprise.

43.     Defendant T. Swarek has/had the power to: hire and fire employees of the single enterprise; supervise and/or control employees of the single enterprise including their work schedules and/or conditions of employment; determine the rates and methods of compensation for the employees of the single enterprise; and maintain the employment records of employees of the single enterprise.

44.     Defendant T. Swarek may be served with summons at 1261 Pass Road, Gulfport, MS 39501 or wherever he may be found.

**G.     Defendant Jonathan Swarek**

45.     Defendant Jonathan Swarek ("J. Swarek") is an individual and was the Director of Longhorn Oilfield Solutions, Inc. and President of Oiltech, Inc.

46.     Longhorn Oilfield Solutions, Inc. is not named as a party to this lawsuit although it may bear liability for its actions as part of the single enterprise because it was dissolved on May 6, 2021.

47.     Oiltech, Inc. is not named as a party to this lawsuit although it may bear liability for its actions as part of the single enterprise because it was dissolved on June 14, 2021.

48.     At times relevant to this lawsuit, Defendant J. Swarek has/had operational control over Longhorn Oilfield Solutions, Inc., Oiltech, Inc., and shared control of the single enterprise. Defendant J. Swarek shared decision-making authority with respect to Plaintiff and the employees of the single enterprise at issue in this case with respect to pay policies and/or practices.

49.     At times relevant to this lawsuit, Defendant J. Swarek was active in the day-to-day business operations of Longhorn Oilfield Solutions, Inc., Oiltech, Inc., and the single enterprise at issue, and shared responsibility for compliance with the FLSA with respect to Plaintiff and the employees of the single enterprise.

50.     Defendant T. Swarek has/had the shared power to: hire and fire employees of the single enterprise; supervise and/or control employees of the single enterprise including their work schedules and/or conditions of employment; determine the rates and methods of compensation for the employees of the single enterprise; and maintain the employment records of employees of the single enterprise.

51.     On information and belief, Defendant J. Swarek is the son or grandson of Defendant T. Swarek.

52.     Defendant J. Swarek may be served with summons at 375 Airport Road, Apt 1130; Pleasanton, Texas 78064 or wherever he may be found.

**H.     <u>Defendant Michael Boothe</u>**

53.     Defendant Michael Boothe ("Boothe") is an individual and the President of Defendant Excell Operating, Inc.

54.     At times relevant to this lawsuit, Defendant Booth has/had operational control over Defendant Excell, and shared control of the single enterprise. Defendant Boothe shared decision-

making authority with respect to Plaintiff and the employees of the single enterprise at issue in this case with respect to pay policies and/or practices.

55.     At times relevant to this lawsuit, Defendant Boothe was active in the day-to-day business operations of Defendant Excell, and the single enterprise at issue, and shared responsibility for compliance with the FLSA with respect to Plaintiff and the employees of the single enterprise.

56.     Defendant Boothe has/had the shared power to: hire and fire employees of the single enterprise; supervise and/or control employees of the single enterprise including their work schedules and/or conditions of employment; determine the rates and methods of compensation for the employees of the single enterprise; and maintain the employment records of employees of the single enterprise.

57.     On information and belief, Defendant Boothe is a familial relation of Defendants T. Swarek and J. Swarek by marriage.

58.     Defendant Boothe may be served with summons at 1261 Pass Road, Gulfport, MS 39501 or wherever he may be found.

**I.     Defendant Zackry Maxey**

59.     Defendant Zackry Maxey ("Maxey") is an individual and the President of Defendant Bullzeye Oilfield Service LLC.

60.     At times relevant to this lawsuit, Defendant Maxey has/had operational control over Defendant Bullzeye, and shared control of the single enterprise. Defendant Maxey shared decision-making authority with respect to Plaintiff and the employees of the single enterprise at issue in this case with respect to pay policies and/or practices.

61.     At times relevant to this lawsuit, Defendant Maxey was active in the day-to-day business operations of Defendant Bullzeye, and the single enterprise at issue, and shared

responsibility for compliance with the FLSA with respect to Plaintiff and the employees of the single enterprise.

62.     Defendant Maxey has/had the shared power to: hire and fire employees of the single enterprise; supervise and/or control employees of the single enterprise including their work schedules and/or conditions of employment; determine the rates and methods of compensation for the employees of the single enterprise; and maintain the employment records of employees of the single enterprise.

63.     Defendant Maxey may be served with summons at 2626 Century Ranch; San Antonio, Texas 78251.

### III.     JURISDICTION AND VENUE

64.     This Court has subject matter jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims are based on federal law, namely the FLSA. *See* 29 U.S.C. § 216(b).

65.     The United States District Court for the Southern District of Mississippi has personal jurisdiction over Defendants because Defendants do business in Mississippi and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in Mississippi and in this District.

66.     Venue is proper in this District and/or Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District, and in this Division.

### IV.   <u>FACTUAL BACKGROUND</u>

67.     Defendants jointly engage in the business of providing oilfield services through a joint workforce. According to its website, "El Dorado Gas and Oil[2] has been committed to exploration and production of our natural resources by continuously utilizing techniques in conjunction with strong community relationships. Our team is proud of our track record of providing valuable solutions through responsible operating."

68.     To the extent that any one entity (not individual) named as a Defendant in this lawsuit does not satisfy the standard for enterprise coverage, they each jointly constitute a single unified enterprise. *See* 29 C.F.R. § 1620.7(b).

69.     Defendants El Dorado, Excell, and Bullzeye, along with non-Parties Oiltech, Inc. and Longhorn Oilfield Solutions, Inc. (the "single enterprise") performed related activities in employing Plaintiff and the putative Collective Action Members to perform services in the Oil and Gas industry. The single enterprise operated through unified operation or common control for a common business purpose. This is evidenced by the substantial continuity in employment experienced by Plaintiff while being paid in the same manner with the same supervisor by different entities in the single enterprise, as discussed further in this Complaint.

70.     Furthermore, the single enterprise Defendants all employed and/or jointly employed Plaintiff and the putative Collective Action Members at times relevant to this lawsuit.

71.     The single enterprise Defendants may be technically separate, but in fact related or overlapping employers. Specifically, the single enterprise was generally controlled by the Swarek family, and relevant employment decisions were made by members of the family. Furthermore,

---

[2]     Defendant El Dorado appears to style its name interchangeably as "El Dorado Gas & Oil, Inc." and "El Dorado Oil & Gas, Inc." *See* El Dorado Gas & Oil, Inc. https://www.eldoradoproduction.com/ (last accessed: Apr. 28, 2022).

regardless of which entity paid Plaintiff or issued him a tax document, his supervisor and type of work did not change. Accordingly, each entity Defendant in this case jointly employed Plaintiff and the putative Collective Action Members.

72.     In the alternative, the single enterprise Defendants jointly exerted or could exert control over hiring and firing decisions relative to Plaintiff and the putative Collective Action Members, jointly supervised and controlled Plaintiff and the putative Collective Action Members' work schedules or conditions of employment jointly determined Plaintiff and the putative Collective Action Members' rate and method of payment, including allegedly violative pay policies and/or practices, and jointly maintained such employment records as exist relative to Plaintiff and the putative Collective Action Members.

73.     Plaintiff David Keller ("Plaintiff" or "Keller") began working for Defendants on or about March of 2018. At first, Plaintiff Keller was a wastewater disposal driver, and he drove intrastate. He was based out of the enterprise's overflow yard in McMullen County, Texas. On information and belief, the trucks he drove were not DOT regulated.

74.     Plaintiff Keller was told he was paid a day rate of $200 per day, which was intended to cover a ten-hour day. If Plaintiff Keller worked over forty hours in a workweek, Defendants would pay Plaintiff Keller at his effective hourly rate, $20, for all such hours of work. Defendants did not pay Plaintiff time and one half his regular rate of pay for all overtime hours of work, but at relevant times paid Plaintiff "straight time for overtime." This pay policy and/or practice applied to many categories of workers working for Defendants, including supervisors.

75.     At first, Plaintiff Keller was paid handwritten checks for all his hours of work as described above. However, Plaintiff later complained about how he was being paid, and then began

to receive proper wage payments. For instance, when Overcast Oil LLC paid him on or about July 6, 2018, it appropriately paid him overtime pay for hours worked over forty in a workweek.

76.    A few months thereafter, Plaintiff Keller was transferred to be stationed at the "308" yard in Tilden, Texas. He again began to experience underpayment of his wages, again receiving handwritten checks and being paid "straight time for overtime." As Plaintiff Keller worked significant overtime hours, this resulted in a large underpayment of Plaintiff Keller's wages. Furthermore, Defendants often did not pay Plaintiff for all of his hours of work ("off-the-clock").

77.    This change back to under compensation, on information and belief, was the result of Defendants T. Swarek and El Dorado insisting in 2019 that workers like Plaintiff Keller again be denied overtime premium pay for work over forty in a seven-day workweek. Although T. Swarek and El Dorado were the decisionmakers behind the pay policy and/or practice which cause this lawsuit, Defendant T. Swarek carefully ensured that his name and the El Dorado name did not appear on any of Plaintiff's or the putative Collective Action Members' employment or pay documents.

78.    On information and belief, at the direction of T. Swarek, other entities involved in the single enterprise improperly misclassified Plaintiff Keller and similarly situated workers as independent contractors and Defendants paid them incorrectly. However, Plaintiff Keller and similarly situated workers were at all times the Defendants' employees. Each such worker worked exclusively for Defendants for an indefinite period and were economically dependent on Defendants.

79.    Defendants controlled the work offered to Plaintiff and similarly situated workers, and their hours and schedules. Plaintiff and similarly situated workers were not separate business

entities but were a workforce performing job duties that were integral to Defendants' business operations.

80.    Plaintiff and similarly situated workers did not provide material investment in Defendants' business operations, and Defendants' investment in their business operations exceeds the investments, if any, of Plaintiff and similarly situated workers in connection with their work for Defendants.

81.    At all times relevant, Plaintiff and similarly situated workers could not and did not hire employees of their own while working for Defendants. Similarly, Plaintiff and similarly situated workers could not and did not subcontract the work assigned to them by Defendants. Instead, there was only opportunity for earned income based upon days worked for Defendants.

82.    All major components open to initiative, such as advertising, pricing, and business decision making, were controlled by Defendants, not Plaintiff and the putative Collective Action Members.

83.    For instance, Plaintiff Keller's 2019 tax forms included a tax form 1099 from Longhorn Oilfield Solutions Inc, and a tax form 1099 from Excell Operating Inc.

84.    Plaintiff has also received a W2 tax reporting form from Oiltech, Inc. in the relevant time period.

85.    In 2018 and 2019, Plaintiff received some handwritten checks from Oiltech, Inc. signed by Kristin Swarek, on information and belief the wife of Defendant Jonathan Swarek. Plaintiff also received some handwritten checks from Longhorn Oilfield Solutions Inc, again signed by Kristin Swarek.

86.     On information and belief some months after the institution of the Paycheck Protection Program of 2020 ("PPP"), Thomas L. Swarek and Zachry Maxey of Bullzeye began a joint venture. At that point Bullzeye and Maxey became part of the alleged single enterprise.

87.     In summer of 2020, Plaintiff Keller received handwritten checks labeled "contract payment" from Excell Operating Inc.

88.     In 2020, Plaintiff received a W-2 from Excell Operating Inc, however Plaintiff had not completed a tax form W-4 with Defendant Excell and is unsure of how the company determined any tax deductions for him.

89.     On or about August of 2020, Plaintiff Keller changed roles and became a gauger/pumper. His job duties were predominantly manual labor in nature and involved cycling 70-80 oil wells on a daily basis (turning some wells on and some wells off), blowing down wells (trying to get the wells to produce), and maintaining compressors in connection with oilfield production work.

90.     At this point in time, Plaintiff's "day rate" was raised to $250 per day, for an effective hourly rate of $25 per hour.

91.     During this time period, Defendant continued to pay Plaintiff Keller and the putative Collective Action Members "straight time for overtime." For all hours worked over forty in a seven-day workweek, he received pay only at $25 per hour rather than at $37.50. As Plaintiff Keller and the putative Collective Action Members frequently worked significant overtime hours, this resulted in a large underpayment of their wages.

92.     Defendants only began to rectify their pay practice, on information and belief, on or about August of 2021, and again only after many complaints from their employees including Plaintiff Keller.

93.     Thereafter, Defendants began to keep more accurate time records for Plaintiff Keller and similarly situated workers. Defendant Bullzeye was responsible for Plaintiff's time records and payment of wages. Still, Plaintiff lodged complaints with Defendant Maxey of Defendant Bullzeye that his timecards were not entered properly and that he was not paid for all hours of work. Eventually, Plaintiff would receive back pay based on those complaints, but never received back pay for unpaid overtime premium pay prior to August of 2021. Plaintiff is not aware if others who did not complain received compensation for administrative errors post-August of 2021.

94.     Defendant Excell has been the subject of a Department of Labor investigation with respect to its pay practices, in part, as alleged herein. Plaintiff was offered back pay as the result of that investigation but elected to proceed with litigation instead of accepting the offered amount.

95.     Plaintiff Keller stopped working for Defendants on or about February of 2022.

96.     Defendants' violations of the FLSA were willful, as Defendants knew as of 2018 that they should have been paying additional overtime premium pay at time and one half for hours worked over forty in a workweek to Plaintiff and similarly situated workers, but instead elected to pay Plaintiff Keller and similarly situated workers at their respective effective hourly rates of pay for hours of overtime work.

97.     At times relevant, Defendants did not make and keep a record of all of the data required by 29 C.F.R. § 516.2 in connection with the work performed by Plaintiff and the putative Collective Action Members.

98.     Plaintiff, on behalf of himself and similarly situated workers, seeks the back overtime premium pay at the rate of .5 his effective hourly rate of pay for all hours worked over forty in each seven day workweek for which they received "straight time for overtime" and at the

rate of 1.5 of their respective effective hourly rates of pay for all "off-the-clock" work  during the relevant time period three years prior to the filing of this lawsuit and forward until Defendant demonstrates that its allegedly violating pay practice or policy was remediated.

## V.   CONTROLLING LEGAL RULES

99.     "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

100.    The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1). The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

101.    Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

102.    Whether an individual is an employee, who is covered by the FLSA"s provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *See Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

103.    District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at 343 (citing *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161

F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind." *Id.* (citing *Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

104.    The FLSA recognizes the doctrine of joint employers. "Where an employee performs work that simultaneously benefits more than one employer, the concept of 'joint employment' imposes individual and joint FLSA liability on all employers." *Parker v. ABC Debt Relief, Ltd. Co.*, No. 3:10-cv-1332-P, 2013 WL 371573, at *4 (N.D. Tex. Jan. 28, 2013) (Solis, J.) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968)).

105.    "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13. *Accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

106.    Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R.

§ 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

## VI.    FLSA CLAIMS FOR OVERTIME PAY

107.   At all relevant times, Defendants were eligible and covered employer under the FLSA. *See* 29 U.S.C. § 203(d).

108.   At all times relevant to this lawsuit, Defendants have been and are enterprises engaged in commerce under the FLSA. *See* 29 U.S.C. § 203(s)(1)(A).

109.   Plaintiff and putative Collective Action Members are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

110.   Plaintiff and putative Collective Action Members were not exempt from overtime under the FLSA.

111.   Plaintiff and putative Collective Action Members are/were paid on a hybrid day rate basis by Defendant.

112.   At times relevant to this lawsuit, Plaintiff and putative Collective Action Members work/worked in excess of 40 hours per seven-day workweek as employees of Defendants.

113.   Defendants are/were required to pay Plaintiff and putative Collective Action Members one and one-half times their respective regular rates of pay for all hours worked over 40 in each relevant seven-day workweek. 29 U.S.C. § 207(a)(1).

114.   Defendants failed to pay Plaintiff and putative Collective Action Members one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit in violation of the FLSA.

115.   Defendants failed to maintain and preserve payroll records which accurately show the total hours worked by Plaintiff and putative Collective Action Members, individually, on a

daily and weekly basis in violation of the recordkeeping requirements of the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a) & 516.5.

116.    Putative Collective Action Members are/were similarly situated to Plaintiff and to each other under the FLSA. 29 U.S.C. § 216(b).

117.    Defendants' violations of the FLSA, as described above, are/were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendants were aware that Plaintiff and putative Collective Action Members were not paid overtime premium pay at the rate of time and one-half their respective regular rates of pay for all hours worked over forty in a seven-day workweek.

118.    Plaintiff and putative Collective Action Members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claim as the result of Defendant's willful conduct. *See* 29 U.S.C. § 255(a).

119.    Plaintiff and putative Collective Action Members seek all damages available for Defendants' failure to timely pay all overtime wages owed, including back wages, liquidated damages, reasonable attorneys' fees and costs, and post-judgment interest.

## VII.    COLLECTIVE ACTION CLAIMS

120.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

121.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.

122.    Plaintiff seeks to bring claims under the FLSA, 29 U.S.C. § 216(b), individually and on behalf of a collective preliminarily defined as:

All current or former employees of Defendant who were paid on a hybrid day rate basis and who are/were not paid time and one-half their respective regular rates of pay for all hours worked over forty (40) during each seven-day workweek.

123.    Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a collective action or other proceeding.

124.    Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

125.    Plaintiff has personal knowledge that other putative Collective Action Members were paid pursuant to the same policy, namely, paid a hybrid day rate basis without being paid all overtime wages due to them.

126.    The putative Collective Action Members are not exempt from receiving overtime premium pay under the FLSA.

127.    Defendant's failure to pay overtime wages results from generally applicable policies or practices, and does not depend on the personal circumstances of the putative Collective Action Members.

128.    The specific job titles or precise job responsibilities of each putative collective action member do not prevent collective treatment.

129.    Although the exact amount of damages may vary among the putative collective action members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

### VIII.   **<u>JURY DEMAND</u>**

130.    Plaintiff demands a jury trial.

## IX.     DAMAGES AND PRAYER

131.    Plaintiff asks that the Court issue summonses for Defendants to appear and answer, and that Plaintiff and the putative Collective Action Members be awarded a judgment against Defendant or order(s) from the Court for the following:

    a.   An order certifying this case as an FLSA collective action and requiring notice to be issued to all putative collective action members;

    b.   All damages allowed by the FLSA, including back wages;

    c.   Liquidated damages in an amount equal to FLSA-mandated back wages;

    d.   Legal fees;

    e.   Costs;

    f.   Post-judgment interest;

    g.   All other relief to which Plaintiff and the collective action members may be justly entitled.

Dated:  April 28, 2022                    Respectfully submitted,

                                          By:     s/ Allen R. Vaught
                                                Allen R. Vaught
                                                MS Bar No. 101695
                                                Vaught Firm, LLC
                                                1910 Pacific Avenue, Suite 9150
                                                Dallas, Texas 75201
                                                (972) 707-7816 – Telephone
                                                (972) 591-4564 – Facsimile
                                                avaught@txlaborlaw.com

                                                Ricardo J. Prieto
                                                (Pro Hac Vice/Lead Counsel)
                                                TX Bar No. 24062947
                                                rprieto@eeoc.net
                                                Melinda Arbuckle
                                                (Pro Hac Vice)
                                                TX Bar No. 24080773
                                                marbuckle@eeoc.net
                                                Shellist Lazarz Slobin LLP

11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 – Telephone
(713) 621-0993 – Facsimile

ATTORNEYS FOR PLAINTIFF AND PUTATIVE
COLLECTIVE ACTION MEMBERS

## **CERTIFICATE OF SERVICE**

On April 28, 2022, I filed the foregoing document with the Clerk of Court for the United States District Court for the Southern District of Mississippi. I certify that all counsel of record were served with the document electronically thereby.

s/ Allen R. Vaught
Allen R. Vaught